UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                              Plaintiff-Applicant,<br><br>            - against -<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                              Defendant. | Adv. Pro. No. 08-01789 (CGM)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                              Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>                              Plaintiff,<br><br>            - against -<br><br>CITIBANK, N.A., CITICORP NORTH AMERICA, INC., AND CITIGROUP GLOBAL MARKETS LIMITED,<br><br>                              Defendants. | Adv. Pro. No. 10-05345 (CGM) |

| | |
|---|---|
| CITIBANK, N.A., CITICORP NORTH AMERICA, INC., AND CITIGROUP GLOBAL MARKETS LIMITED,<br><br>       Appellants,<br><br>   - against -<br><br>IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>       Appellee. | **ORDER**<br><br>22 Civ. 9597 (PGG) |

PAUL G. GARDEPHE, U.S.D.J.:

    This action arises from an adversary proceeding brought by Irving Picard, the trustee ("Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), against Defendants Citibank, N.A. ("Citibank"), Citicorp North America, Inc. ("Citicorp"), and Citigroup Global Markets Limited ("Citi Global") (collectively "Defendants"), to recover approximately $443,084,590 of BLMIS customer property that Defendants allegedly received as subsequent transfers from BLMIS feeder funds.

    On October 13, 2022, the United States Bankruptcy Court for the Southern District of New York denied Defendants' motion to dismiss the Trustee's Amended Complaint. (Order, Picard v. Citibank, N.A., Adv. Pro. No. 10-05345 (Bankr. S.D.N.Y. Oct. 13, 2022), Dkt. No. 244) On November 9, 2022, Defendants moved in this Court for leave to appeal that decision pursuant to 28 U.S.C. § 158(a)(3) and Federal Rule of Bankruptcy Procedure 8004. (Dkt. No. 4)

    For the reasons stated below, Defendants' motion will be denied and the appeal will be dismissed.

2

## BACKGROUND

I. **FACTS**

Bernard Madoff operated a Ponzi scheme for many years through his investment advisory business at BLMIS.[1] While Madoff claimed that BLMIS customers' money was invested in securities, the investment advisory business in reality had "no legitimate business operations and produced no profits or earnings." (Amended Complaint ¶ 62, Adv. Pro. No. 10-05345, Dkt. No. 214 ("Am. Cmplt.")) The scheme collapsed in December 2008 when "BLMIS customers' requests for redemptions overwhelmed the flow of new investments." (Id. ¶ 85) Madoff was arrested, and at a March 12, 2009 plea hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." (Id. ¶ 15) (brackets in original)

The Trustee alleges that Defendants Citibank and Citicorp "received at least $343,084,590 in subsequent transfers of BLMIS customer property" from Rye Select Broad Market Prime Fund, L.P. ("Prime Fund"), which the Trustee now seeks to recover in the associated adversary proceeding in Bankruptcy Court. (Id. ¶ 3) Prime Fund was among several "feeder funds" operated by Tremont Partners, a Connecticut corporation that served as Prime Fund's general partner and investment manager. Prime Fund had "invested substantially all of [its] assets with BLMIS." (Id. ¶¶ 52-53, 89)

The Trustee alleges that Prime Fund received $945 million in initial transfers of BLMIS customer property within six years of the December 11, 2008 filing date of the primary proceeding in the Bankruptcy Court under the Securities Investor Protection Act ("SIPA"). The

---

[1] This Court assumes familiarity with the details of Madoff's Ponzi scheme, which are set forth in many prior opinions. See, e.g., In re BLMIS, 654 F.3d 229, 231 (2d Cir. 2011) (collecting cases).

3

Trustee alleges that those transfers are voidable under § 544 of the Bankruptcy Code and New York Debtor and Creditor Law §§ 273-279. (Id. ¶¶ 10, 175) Of the $945 million in transfers, the Trustee alleges that Prime Fund received $495 million from BLMIS within two years of the SIPA filing date. The transfers of the $495 million are voidable under § 548 of the Bankruptcy Code as fraudulent transfers. (Id. ¶ 176) Of that $495 million, the Trustee alleges that BLMIS transferred $475 million to the Prime Fund in a single transaction on March 25, 2008. (Am. Cmplt., Ex. E)

Defendants Citibank and Citicorp allegedly received the transfers from the Prime Fund "in connection with a credit agreement" that they had entered into with the Prime Fund on June 15, 2005. (Am. Cmplt. ¶ 3) The Trustee seeks to recover $343,084,590 that the Prime Fund transferred to Citibank and Citicorp in 38 transactions that took place between June 16, 2005 and March 26, 2008. (Am. Cmplt., Ex. F) Of that $343,084,590, the Trustee alleges that the Prime Fund transferred approximately $300 million to Citibank and Citicorp on March 26, 2008, one day after BLMIS had transferred $475 million to the Prime Fund. (Id.)

The Trustee further alleges that Defendant Citi Global "received at least $130,000,000 in subsequent transfers of BLMIS customer property" from Fairfield Sentry Limited ("Fairfield Sentry"), of which the Trustee seeks to recover $100 million. (Id. ¶ 4) Fairfield Sentry was a New York-based hedge fund and "BLMIS feeder fund" that, like the Prime Fund, "invested all or substantially all of its assets into the BLMIS Ponzi scheme." (Id. ¶¶ 55, 172) The Trustee alleges that Fairfield Sentry received $2,895,000,000 from BLMIS within six years of the SIPA filing date that is voidable under § 544 of the Bankruptcy Code and New York Debtor and Creditor Law §§ 273-279. (Id. ¶ 167) Of those funds, the Trustee alleges that BLMIS transferred approximately $1.6 million to Fairfield Sentry during the two years

4

preceding the SIPA filing. The Trustee contends that the transfer of the $1.6 million is voidable as a fraudulent transfer under § 548 of the Bankruptcy Code. (Id. ¶ 168)

Citi Global was also an investor in Fairfield Sentry. (Id. ¶¶ 32, 36) The Trustee seeks to recover two transfers from Fairfield Sentry to Citi Global in connection with Citi Global's investment in Fairfield Sentry: a $60 million transfer on April 14, 2008, and a $40 million transfer on November 19, 2008. (Am. Cmplt., Ex. C)

## II. PROCEDURAL HISTORY

The primary SIPA proceeding was filed in the United States District Court for the Southern District of New York on December 11, 2008. The case was transferred to this District's Bankruptcy Court on December 16, 2008. (Order, Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities LLC, Adv. Pro. No. 08-01789 (Bankr. S.D.N.Y. Dec. 16, 2008), Dkt. No. 1)

The Trustee's Complaint in the adversary proceeding involving Defendants was filed on December 8, 2010. (Adv. Pro. No. 10-05345, Dkt. No. 1) The Trustee filed the Amended Complaint on February 11, 2022. (Adv. Pro. No. 10-05345, Dkt. No. 214) Defendants moved to dismiss the Amended Complaint on April 22, 2022. (Adv. Pro. No. 10-05345, Dkt. No. 222)

United States Bankruptcy Judge Cecelia G. Morris entered a memorandum decision on September 27, 2022 and an order on October 13, 2022 denying Defendant's motion. (Adv. Pro. No. 10-05345, Dkt. Nos. 239, 244)

On November 9, 2022, Defendants moved in this Court for leave to appeal Judge Morris's decision. (Dkt. No. 4) The Trustee filed an opposition brief on November 16, 2022 (Dkt. No. 8), and Defendants filed a reply on November 30, 2022. (Dkt. No. 12)

## DISCUSSION

Defendants move pursuant to 28 U.S.C. § 158(a)(3) for leave to file an interlocutory appeal addressing two issues related to the Bankruptcy Court's denial of their motion to dismiss the Amended Complaint. Defendants contend that the Bankruptcy Court erred in (1) relying on the so-called "Ponzi scheme presumption" in finding that "the Trustee satisfied his burden to plead intentionally fraudulent transfer under 11 U.S.C. § 548(a)(1)(A)"; and (2) "holding that the Trustee could recover a transfer under 11 U.S.C. § 550(a) when that transfer . . . was an isolated segment of an integrated transaction that did not deplete the bankruptcy estate." (Def. Br. (Dkt. No. 4) at 7)[2]

The Trustee maintains that neither issue is appropriate for interlocutory appeal. (Trustee Opp. (Dkt. No. 8) at 9)

### I.     LEGAL STANDARD

Under 28 U.S.C. § 158(a)(3), "a district court has discretionary appellate jurisdiction over an interlocutory order of a bankruptcy court." In re Kassover, 343 F.3d 91, 94 (2d Cir. 2003). "'Although [§] 158 and the Bankruptcy Rules describe the right to appeal from an interlocutory order and the procedure for doing so, neither provides guidelines for determining whether a district court should grant leave to appeal in a particular case.'" In re Olympic Prop. Partners, LLC, 566 B.R. 334, 339 (S.D.N.Y. 2017) (quoting In re Cutter, No. CV-05-5527, 2006 WL 2482674, at *4 (E.D.N.Y. Aug. 29, 2006)). Accordingly, "'most district courts in the Second Circuit have applied the analogous standard for certifying an interlocutory

---

[2] The page numbers of documents referenced in this order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

appeal from a district court order, set forth in 28 U.S.C. § 1292(b).'" Id. (quoting Cutter, 2006 WL 2482674, at *4).

28 U.S.C. § 1292(b) authorizes a district court to certify an order for interlocutory appeal where the "order involves a controlling question of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal from the order may materially advance the ultimate termination of the litigation." "The moving party has the burden of establishing all three elements." Segedie v. The Hain Celestial Grp., Inc., No. L 4-CV-5029 NSR, 2015 WL 5916002, at *1 (S.D.N.Y. Oct. 7, 2015).

As to the first factor, "a question of law is 'controlling' if reversal of the [lower] court's order would terminate the action." Klinghoffer v. S.N.C. Achille Lauro, 921 F.2d 21, 25 (2d Cir. 1990). "A question of law can also be controlling if reversal of the [lower] court's order 'could significantly affect the conduct of the action" or if 'the certified issue has precedential value for a large number of cases.'" Tantaros v. Fox News Network, LLC., 465 F. Supp. 3d 385, 389 (S.D.N.Y. 2020) (quoting Glatt v. Fox Searchlight Pictures Inc., No. 11-CV-6784, 2013 WL 5405696, at *2 (S.D.N.Y. Sept. 17, 2013)). The potential appeal must present "a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." Capitol Recs., LLC v. Vimeo, LLC, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013) (citation and quotation marks omitted).

As to the second factor, there is "substantial ground for difference of opinion" under Section 1292(b) where "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." In re Enron Corp., No. 01-16034, 2007 WL 2780394, at *1 (S.D.N.Y. Sept. 24, 2007) (quoting In re Lloyd's Am. Trust Funds Litig., No. 96 Civ. 1262, 1997 WL 458739, at *5 (S.D.N.Y. Aug. 12, 1997)). "[T]he mere

7

presence of a disputed issue that is a question of first impression" is not sufficient, In re Flor, 79 F.3d 281, 284 (2d Cir. 1996), nor is it enough to show the "possibility of a different outcome on appeal." Segedie, 2015 WL 5916002, at *3. Instead, there must be "substantial doubt that the [lower] court's order was correct." SPL Shipping Ltd. v. Gujarat Cheminex Ltd., No. 06-CV-15375KMK, 2007 WL 1119753, at *2 (S.D.N.Y. Apr. 12, 2007) (quotation marks omitted). Ultimately, "[i]t is the duty of the district judge to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a substantial ground for dispute." Flor, 79 F.3d at 284 (quotation marks and citation omitted).

In connection with the third factor, a court granting certification must find that "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). This factor is "closely connected to the question of whether the appeal involves a controlling question of law," In re 650 Fifth Ave., No. 1:08-CV-10934-RJH, 2012 WL 363118, at *2 (S.D.N.Y. Feb. 2, 2012), and is one on which courts place "particular weight." Transp. Workers Union of Am., Loc. 100, AFL-CIO v. New York City Transit Auth., 358 F. Supp. 2d 347, 350 (S.D.N.Y. 2005). "[I]n evaluating this factor, courts must consider the institutional efficiency of both the district court and the appellate court." Tocco v. Real Time Resols., Inc., No. 14CV810, 2015 WL 5086390, at *2 (S.D.N.Y. Mar. 4, 2015).

"Even when the statutory criteria are met, '[d]istrict court judges have broad discretion to deny certification.'" Segedie, 2015 WL 5916002, at *1 (S.D.N.Y. Oct. 7, 2015) (quoting Century Pac., Inc. v. Hilton Hotels Corp., 574 F. Supp. 2d 369, 370 (S.D.N.Y. 2008)). Certification for interlocutory appeal should be "strictly limited," because only "'exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review

8

until after the entry of a final judgment.'" Flor, 79 F.3d at 284 (brackets in original) (quoting Klinghoffer, 921 F.2d at 25). But "[w]hen a ruling satisfies [the § 1292(b)] criteria and 'involves a new legal question or is of special consequence,' then the district court 'should not hesitate to certify an interlocutory appeal.'" Balintulo v. Daimler AG, 727 F.3d 174, 186 (2d Cir. 2013) (quoting Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100, 111 (2009))

## II. ANALYSIS

### A. Ponzi Scheme Presumption

11 U.S.C. § 548(a)(1) states that

> [t]he trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily --
>
> > (A) made such transfer or incurred such obligation with <u>actual intent to hinder, delay, or defraud</u> any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted

Id. (emphasis added).

Under the "Ponzi scheme presumption," a court may infer that the existence of a Ponzi scheme "demonstrates 'actual intent' [under Section 548(a)(1) to hinder, delay, or defraud creditors] as a matter of law because 'transfers made in the course of a Ponzi scheme could have been made for no purpose other than to hinder, delay or defraud creditors.'" In re Manhattan Inv. Fund Ltd., 397 B.R. 1, 8 (S.D.N.Y. 2007) (quoting In re Manhattan Inv. Fund Ltd., 359 B.R. 510, 517-18 (Bankr. S.D.N.Y. 2007).[3]

---

[3] The Second Circuit has not "held directly that the [Ponzi scheme] presumption is well-founded," although it has "applied the Ponzi scheme presumption in prior cases when its application was uncontested." In re Bernard L. Madoff Inv. Sec. LLC, 12 F.4th 171, 202 n.7 (2d Cir. 2021) (Menashi, J., concurring). Many district courts and bankruptcy courts within this Circuit have applied the presumption. See, e.g., Picard v. Cohen, Adv. Pro. No. 10-04311

The Bankruptcy Court relied on the Ponzi scheme presumption in concluding that the Amended Complaint adequately alleges that initial transfers from BLMIS to Prime Fund and Fairfield Sentry were made with "actual intent" to defraud under Section 548(a)(1). (Memorandum Decision at 7-9, Adv. Pro. No. 10-05345, Dkt. No. 239) Defendants contend that the Bankruptcy Court erred in relying on the Ponzi scheme presumption, because the "presumption . . . is extra-statutory, overbroad, and improperly sweeps in valid and unavoidable transfers." (Def. Br. (Dkt. No. 4) at 15)

Defendants have not shown that addressing the validity of the Ponzi scheme presumption would "materially advance the ultimate termination of the litigation," however. The Bankruptcy Court held in the alternative that "BLMIS' actual fraudulent intent is well-pled in detail in the [Amended] Complaint" through a particularized showing of "badges of fraud" with respect to BLMIS's initial transfers to the Prime Fund and Fairfield Sentry. (Memorandum Decision at 10-12, Adv. Pro. No. 10-05345, Dkt. No. 239)[4] Given this alternative holding,

---

(SMB), 2016 WL 1695296, at *5 (Bankr. S.D.N.Y. Apr. 25, 2016) ("[T]he Trustee is entitled to rely on the Ponzi scheme presumption pursuant to which all transfers are deemed to have been made with actual fraudulent intent." (citation omitted)); Picard v. Cohmad Sec. Corp., 454 B.R. 317, 330 (Bankr. S.D.N.Y. 2011) ("[T]he fraudulent intent on the part of the debtor/transferor . . . is established as a matter of law by virtue of the 'Ponzi scheme presumption'. . . ."); Manhattan Inv. Fund Ltd., 397 B.R. at 11 ("[T]he Ponzi scheme presumption remains the law of this Circuit. . . .").

[4] "[B]adges of fraud" may include:

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry.

reversal of the Bankruptcy Court's ruling with respect to the Ponzi scheme presumption would not alter the outcome concerning Defendants' motion to dismiss, let alone materially advance resolution of this case.

While Defendants maintain that the Bankruptcy Court erred in its "badges of fraud" analysis, they do not seek leave to appeal concerning that issue. (See Def. Br. (Dkt. No. 4) at 7 (listing "two discrete legal issues" on which Defendants "seek leave to appeal," and not referencing the Bankruptcy Court's "badges of fraud" determination); id. at 14 (same); Def. Reply (Dkt. No. 12) at 6 (same))[5]

Finally, the Trustee has proffered that he would "seek to replead to cure any deficiency" in the Amended Complaint's allegations of fraud. (Trustee Opp. (Dkt. No. 8) at 21) For this reason, courts have held that challenges to "the sufficiency of . . . pleadings" are "not generally the appropriate subjects of interlocutory review, as a reversal [on interlocutory appeal]

---

In re Kaiser, 722 F.2d 1574, 1582-83 (2d Cir. 1983).

[5] Even if Defendants had requested leave to appeal the Bankruptcy Court's holding concerning "badges of fraud," that issue would not constitute an appropriate "question of law" for interlocutory review. In disputing the Bankruptcy Court's analysis, Defendants argue that the Amended Complaint's allegations are not sufficient to establish "that the particular initial transfer[s to Prime Fund and Fairfield sentry] [were] undertaken with actual fraudulent intent" – i.e., that the Amended Complaint does not plead badges of fraud with sufficient particularity with respect to the transactions at issue. (Def. Br. (Dkt. No. 4) at 20) Defendants also fault the Bankruptcy Court for not making a finding as to one particular badge of fraud – whether "the initial transfer from BLMIS to Fairfield Sentry was made for inadequate consideration." (Id. at 19) At bottom, however, Defendants' objections do not "concern a dispute or disagreement as to the applicable law" related to pleading badges of fraud, but instead address "whether the court's application of the decided and governing case law to the relevant facts is appropriate." Abortion Rts. Mobilization, Inc. v. Regan, 552 F. Supp. 364, 366 (S.D.N.Y. 1982). Issues involving the "application of the law to the facts . . . do not present issues of pure law and therefore are not appropriate for interlocutory review." Stone v. Patchett, No. 08 CV 5171 (RPP), 2009 WL 1544650, at *2 (S.D.N.Y. June 3, 2009) (citation omitted); see also DeVittorio v. Hall, No. 07-cv-0812 (WCC), 2008 WL 273981, at *2 (S.D.N.Y. Jan. 29, 2008) ("A controlling legal issue is a question of law, not one of factual dispute where the court applies well-settled legal principles." (citation omitted)).

at most could lead only to a remand for repleading, with possibilities of further interlocutory appeals thereafter." In re Facebook, Inc., IPO Sec. & Derivative Litig., 986 F. Supp. 2d 524, 530 (S.D.N.Y. 2014) (quotation marks and citations omitted) (brackets in original); see also In re Manhattan Inv. Fund Ltd., 288 B.R. 52, 57 (S.D.N.Y. 2002) ("[E]ven if this court were to find on interlocutory appeal that the Bankruptcy Court improperly applied the Ponzi scheme presumption to the facts of this case, there is no evidence to suggest that the Trustee could not and would not replead so as to cure this 'deficiency' by alleging specific instances of 'actual intent' to defraud . . . . Thus, [defendant] has failed to show that granting leave for interlocutory appeal would materially advance the ultimate termination of this litigation as opposed to further prolonging it.").

In sum, Defendants have not shown that addressing the validity of the Ponzi scheme presumption would materially advance the resolution of this litigation. Accordingly, leave to appeal this issue will be denied.[6]

### B. Depletion of the Estate

As discussed above, the Trustee alleges that the Prime Fund – a feeder fund for BLMIS – received $945 million in initial transfers of BLMIS customer property within six years of the December 11, 2008 filing date of the primary proceeding in Bankruptcy Court. The Trustee alleges that those transfers are voidable under § 544 of the Bankruptcy Code and New York Debtor and Creditor Law §§ 273-279. (Am. Cmplt. ¶¶ 10, 175) Of the $945 million in transfers, the Trustee alleges that Prime Fund received $495 million from BLMIS within two

---

[6] Because "[t]he movant bears the burden of demonstrating that all three of the substantive criteria [in 28 U.S.C. § 1292(b)] are met," this Court need not address the remaining Section 1292(b) factors. Murray v. UBS Sec., LLC, No. 12 CIV. 5914 KPF, 2014 WL 1316472, at *2 (S.D.N.Y. Apr. 1, 2014) (citing Casey v. Long Island R. Co., 406 F.3d 142, 146 (2d Cir. 2005)).

years of the SIPA filing date. According to the Trustee, the transfers of the $495 million are voidable under § 548 of the Bankruptcy Code as fraudulent transfers. (Id. ¶ 176) And of the $495 million, the Trustee alleges that BLMIS transferred $475 million to the Prime Fund in a single transaction on March 25, 2008. (Am. Cmplt., Ex. E)

        The Trustee further pleads that between June 16, 2005 and March 26, 2008, Defendants Citibank and Citicorp "received at least $343,084,590 in subsequent transfers of BLMIS customer property" from the Prime Fund, which the Trustee seeks to recover in the adversary proceeding. (Am. Cmplt. ¶ 3) Citibank and Citicorp allegedly received these funds as a loan repayment pursuant to a June 15, 2005 credit agreement they had entered into with the Prime Fund. (Id. ¶ 3; Picard v. Tremont Group Holdings, Inc., Adv. Pro. No. 10-05310 (Bankr. S.D.N.Y. Dec. 7, 2010), Dkt. No. 1 ("Tremont Complaint") ¶ 91)[7] Of that $343,084,590, the Trustee alleges that the Prime Fund transferred approximately $300 million to Citibank and Citicorp on March 26, 2008, one day after the transfer of $475 million from BLMIS to Prime Fund. (Am. Cmplt., Exs. E, F)

        Defendants Citibank and Citicorp contend, however, that "[w]hen [the] Prime Fund decided to repay Citibank its loan principal" via the $300 million transfer on March 26, 2008 – allegedly using a portion of the $475 million that the Prime Fund had received from BLMIS on March 25, 2008 – the money transferred by BLMIS "was replaced with money from another bank, i.e., the source simply changed." (Def. Br. (Dkt. No. 4) at 12) Defendants therefore argue that "there was no . . . depletion of the BLMIS estate." (Id.)

---

[7] The Amended Complaint incorporates by reference the Tremont Complaint's factual allegations. (Am. Cmplt. ¶ 88)

13

Some courts in this District have held that "diminution of estate" is relevant to a fraudulent conveyance claim because "§ 548(a)(1)(A) only permits a trustee to avoid a transfer of an interest of the debtor in property when, but for the transfer, such property interest would have been available to at least one of the debtor's creditors." Bear, Stearns Sec. Corp. v. Gredd, 275 B.R. 190, 196 (S.D.N.Y. 2002). To establish this "no diminution of estate" defense, the transferee bears the burden of demonstrating that the transfer did not "(1) reduce the res that would have been available to any creditor or creditors, (2) 'hinder, delay, or defraud' any creditor or creditors, nor (3) have any other adverse impact on any creditor or creditors generally." Id. (quoting 11 U.S.C. § 548(a)(1)(A)). Moreover, the Bear, Stearns court "decline[d] to make 'diminution of estate' an element of [a] § 548(a)(1)(A) [fraudulent conveyance claim]."

Defendants raised their "depletion of the estate" argument in Bankruptcy Court, where they argued that they "should not have to repay the subsequent transfer funds that [they] allegedly received because another lender replaced the financing" to BLMIS. (See Memorandum Decision at 16, Adv. Pro. No. 10-05345, Dkt. No 239)

In rejecting Defendants' argument, the Bankruptcy Court noted that absolving Citibank and Citicorp of fraudulent transfer liability on this basis would be contrary to the "Net Investment Method" approved by the Second Circuit:

> If Citibank can prove that another lender repaid BLMIS, the other lender would be the party entitled to a credit from BLMIS, not Citibank. Citibank obtained complete dominion and control over BLMIS' customer property and was free to use it as it saw fit. If the Court were to credit Citibank for these funds as well as the other lender, the BLMIS estate would be giving two credits based on one deposit. See Picard v. Lustig (In re BLMIS), 568 B.R. 481, 487 (Bankr. S.D.N.Y. 2017). This is contrary to reason and contrary to the "Net Investment Method" approved by the Second Circuit. Id.; In re BLMIS, 654 F.3d 229, 239 (2d Cir. 2011) ("[T]he Net Investment Method allows the Trustee to make payments based on withdrawals and deposits, which can be confirmed by the debtor's books and

14

records, and results in a distribution of customer property that is proper under SIPA."), cert. denied, 567 U.S. 934 (2012). (Id. at 16).

The Bankruptcy Court also concluded that because "the Trustee has not pled that the Citibank transfers were repaid by another party," "Citibank's defense is not apparent on the face of this Complaint," and thus provides no basis for granting a motion to dismiss. (Id. (citing United States v. Space Hunters, Inc., 429 F.3d 416, 426 (2d Cir. 2005))

Defendants contend that the Bankruptcy Court erred in not addressing the "threshold issue" that "a transfer cannot be a fraudulent transfer unless it allegedly depleted the estate." (Def. Br. (Dkt. No. 4) at 20-21) According to Defendants, the Tremont Complaint allegations – which "the Trustee incorporated into his Amended Complaint" – show that the "$300 million Prime Fund-to-Citibank subsequent transfer . . . was part of an 'integrated series of transactions' that did not deplete any assets of the BLMIS estate." (Id. at 20, 23) Defendants further contend that the Bankruptcy Court erred in applying the "Net Investment Method," because that analysis "does not apply to the question of whether an initial transfer to an investor is fraudulent." The Net Investment Method instead addresses the "calculat[ion] [of] customer claims against the estate, allowing the Trustee 'to make payments based on withdrawals and deposits' to distribute customer property." (Id. at 23-24 (quoting In re BLMIS, 654 F.3d 229, 239 (2d Cir. 2011))

As an initial matter, the thrust of Defendants' arguments concern the "application of the law to the facts." Stone, 2009 WL 1544650, at *2. For example, Defendants point to the "integrated transaction doctrine," pursuant to which a court may find that "'interrelated yet formally distinct steps in an integrated transaction may not be considered independently of the overall transaction.'" In re Waterford Wedgwood USA, Inc., 500 B.R. 371, 379 (Bankr.

15

S.D.N.Y. 2013) (quoting Commissioner v. Clark, 489 U.S. 726, 738 (1989)). But the determination of whether certain transactions are "interrelated" requires a fact-bound analysis. That determination does not present an "issue[] of pure law" appropriate for interlocutory review. Stone, 2009 WL 1544650, at *2.

And to the extent Defendants have identified "question[s] of law" related to the Trustee's pleading burden on a Section 548(a)(1) claim, or the relevance of the Net Investment Method, they have not shown that these issues are "controlling." The Amended Complaint alleges that the Prime Fund received $475 million from BLMIS on March 25, 2008, and that therefore the BLMIS estate was depleted to that extent. (Am. Cmplt., Ex. E) Defendants have not proffered facts demonstrating that "[w]hen [the] Prime Fund decided to repay Citibank its loan principal, the money was replaced with money from another bank." (Def Br. (Dkt. No. 4) at 12) Indeed, Defendants rely on a few brief references in complaints filed by the Trustee in other Madoff cases. (Id. (citing Tremont Cmplt. ¶ 198; ABN AMRO Cmplt. ¶ 57, Picard v. ABN AMRO Bank (Ireland) Ltd., Adv. Pro. No. 10-05355 (Bankr. S.D.N.Y. June 18, 2012), Dkt. No. 42 ("ABN AMRO Cmplt."))

The relevant paragraph in the Tremont Complaint – which the Amended Complaint incorporates by reference (Am. Cmplt. ¶ 88) – is as follows:

> As the inevitable collapse of the Ponzi scheme drew closer, questions about Madoff continued. In March 2008, Citibank sought for the first time indemnification for manager fraud – i.e., fraud on the part of Madoff – as a condition for extending a credit line to the Prime Fund. Until that time, Citibank had been providing financing for Prime Fund for approximately three years. Instead of admitting to themselves that this was a major red flag, <u>Tremont sought out another bank that would continue providing leverage to exploit Madoff's returns.</u>

16

(Tremont Cmplt. ¶ 198) (emphasis added)[8]

In sum, the Tremont Complaint merely alleges that after the Prime Fund repaid Citibank and Citicorp in March 2008, Prime Fund's manager Tremont "sought out another bank" for additional funding. (Id.) The pleadings do not contain evidence that (1) the Prime Fund or any other Tremont entity received additional funds from another lender; (2) the amount of any such funds; (3) the identity of any new lender; (4) whether any Tremont entity later transferred any of those funds to BLMIS; or (5) when and pursuant to what terms and conditions any such transactions took place. There are thus no factual allegations that the Prime Fund (or any other Tremont entity) replaced the funds the BLMIS had transferred to the Prime Fund. There is likewise nothing in the pleadings that would provide this Court with a factual basis to conclude that there was no "depletion of the estate." For these reasons, the "depletion of the estate" issue does not present a "controlling" issue for interlocutory review.

As to the second Section 1292(b) factor for considering a proposed interlocutory appeal, Defendants have not demonstrated that there is "substantial ground for difference of opinion" as to whether the Trustee is obligated to plead that the money transferred to Defendants was not replaced by another lender. (Memorandum Decision at 16, Adv. Pro. No. 10-05345, Dkt. No. 239) It is settled law that "a complaint can be dismissed for failure to state a claim pursuant to a Rule 12(b)(6) motion raising an affirmative defense" only "'if the defense appears on the face of the complaint.'" Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 158 (2d Cir. 2003) (quoting Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998)) And as noted above, the Bear, Stearns court

---

[8] To the extent that Defendants rely on the ABN AMRO complaint, that pleading provides no basis for granting their motion to dismiss, because it is not incorporated by reference in the Amended Complaint.

"decline[d] to make 'diminution of [the] estate' an element of [a] § 548(a)(1)(A) [claim]," holding instead that "the transferee bear[s] both the ultimate burden of proof as well as the initial burden of production on this issue." Bear, Stearns, 275 B.R. at 196.

And while Defendants cite cases holding that "depletion of the estate" is an element of a fraudulent conveyance claim (Def. Br. (Dkt. No. 4) at 20-22; Def. Reply (Dkt. No. 12) at 12-13), here the Amended Complaint clearly pleads that the $475 million transfer from BLMIS to the Prime Fund on March 25, 2008 depleted the estate of BLMIS, at least as an initial matter. (Am. Cmplt., Ex. E) As discussed above, nothing in the pleadings suggests that another lender replenished BLMIS' accounts, replacing the $300 million that BLMIS had transmitted to the Prime Fund as part of the $475 million transaction on March 25, 2008, and which the Prime Fund then transmitted to Citibank and Citicorp on March 26, 2008. It was this additional factual showing that the Bankruptcy Court deemed a "defense" that the Trustee was not obligated to address in its pleading. (Memorandum Decision at 16, Adv. Pro. No. 10-05345, Dkt. No. 239) And nothing in the cases cited by Defendants (see Def. Reply (Dkt. No. 12) at 12-13 (citing In re Zetta Jet USA, Inc., No. 2:17-BK-21386-SK, 2021 WL 3721477, at *21 (Bankr. C.D. Cal. Aug. 17, 2021); In re CyberCo Holdings, Inc., 382 B.R. 118, 141 (Bankr. W.D. Mich. 2008); and In re McCurnin, 590 B.R. 729, 743 (Bankr. E.D. Va. 2018)) suggests that the Bankruptcy Court erred in making a distinction between the Trustee's pleading burden and an affirmative defense that Defendants have the burden of raising and proving under Section 548(a)(1).

In sum, Defendants have not shown that there is a "substantial ground for [a] difference of opinion" as to the Trustee's pleading burden on a Section 548(a)(1) claim. 28 U.S.C.§ 1292(b).

As to the final Section 1292(b) factor, resolution of the issues raised by Defendants would not "materially advance the ultimate termination of the litigation," because these issues are not "controlling." Even if all the legal issues were resolved in Defendants' favor, Defendants have cited no factual basis in the pleadings for their "depletion of the estate" defense.[9]

Because Defendants have not satisfied any of the Section 1292(b) factors related to their second question, leave to appeal regarding this issue will likewise be denied.

## CONCLUSION

For the reasons stated above, Defendants' motion for leave to appeal is denied. The Clerk of Court is directed to terminate the motion (Dkt. No. 1) and to close this case.

Dated: New York, New York
       March 14, 2024

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge

---

[9] Given this Court's findings concerning the Section 1292(b) factors, it is not necessary to further address the Bankruptcy Court's application of the Net Investment Method.